Case No. 16-1149 (-1186)

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### HENRYK OLEKSY,

*Plaintiff-Appellant*,

**v.**

### GENERAL ELECTRIC COMPANY,

*Defendant-Cross Appellant*,

ALIN MACHINING COMPANY, INC., dba Power Plant Service Corporation,

*Defendant.*

Appeal from the United States District Court for the Northern District of Illinois, Case No. 1:06-cv-01245, Judge Virginia M. Kendall.

## DEFENDANT-CROSS APPELLANT GENERAL ELECTRIC COMPANY'S REPLY BRIEF

Richard L. Rainey
Anthony Herman
Courtney R. Forrest
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth St. NW
Washington, DC 2001-4956
Tel: (202) 662-6000

Matthew B. McFarlane
ROBINS KAPLAN LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022
Tel: (212) 980-7400

Martin R. Lueck
Marla R. Butler
Brenda L. Joly
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Tel: (612) 349-8500

Anna C. Halsey
ROBINS KAPLAN LLP
One Atlantic Center
1201 West Peachtree Street, Suite 2200
Atlanta, GA 30309
Tel: (404) 760-4300

*Attorneys for Defendant-Cross Appellant*
*General Electric Company*

June 13, 2016

# CERTIFICATE OF INTEREST

Counsel for the Defendant-Cross Appellant certifies the following:

1.    The full name of every party or amicus represented by me is:

General Electric Company

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

The party named above in (1) is the real party in interest.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

**Marshall Gerstein & Borun**:  John Randolph Labbé, Paul Bryan Stephens, Russell Charles Petersen

**Jenner & Block LLP**:  Bradford P. Lyerla, Adam Unikowsky, Sara Tonnies Horton, William M. Chang, Yusef Esat

**Robins Kaplan LLP**:  Brandon C. Arnold

**Masuda, Funai, Eifert & Mitchell, Ltd.**:  Joseph Albert Saltiel

Dated: June 13, 2016              /s/ Richard L. Rainey
                                  Richard L. Rainey
                                  *Attorney for Defendant-Cross Appellant*

# Table of Contents

**Page**

Introduction ....................................................................................1

Argument .........................................................................................5

    I.    The Asserted Claims Are Not Patent Eligible. .............................5

        A.    Using Trigonometric Analysis To Create Programmed Instructions in the Work Coordinate System Is an Unpatentable Abstract Mathematical Solution. ....................................................................8

        B.    The Application of an Otherwise Patent-Ineligible Trigonometric Analysis Is Causing the Movement of the Spinning Form Cutter in a Convex Path. ................10

    II.    GE Has a Shop Right—an Implied License—to the '529 Patent as a Matter of Law under the Legally Relevant Undisputed Facts. ...........................................................12

        A.    Oleksy Misconstrues This Court's Decision in *McElmurry* and Ignores Controlling Illinois and Supreme Court Law. ...............................................14

        B.    Undisputed Facts Regarding GE's Acquisition of Preferred Confirm, Rather Than Preclude, GE's Shop Rights. ..........................................................19

        C.    GE Did Not Waive Its Shop Rights. ....................................22

        D.    GE's Original Counterclaim for Breach of Contract Does Not Preclude Shop Right. ...........................................25

Conclusion..........................................................................................27

# Table of Authorities

**Page**

## Cases

*Alice Corp. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014).....................................................................5, 7, 8, 10, 11

*Board of Trustees of Leland Stanford Univ. v. Roche Molecular Sys., Inc.*,
583 F.3d 832 (Fed. Cir. 2009)...........................................................................26

*Board of Trustees of Leland Stanford Univ. v. Roche Molecular Sys., Inc.*,
2007 WL 608009 (N.D. Cal. 2007)....................................................................25

*Cal. E. Labs., Inc. v. Gould*,
896 F.2d 400 (9th Cir. 1990)................................................................16, 19, 21

*Colagrossi v. UBS Sec., LLC*,
2015 IL App (1st) 133694-U (Ill. App. Aug. 21, 2015) ................................21

*Diamond v. Diehr*,
450 U.S. 175 (1981)..................................................................................7, 10, 11

*Gate-Way, Inc. v. Hillgren*,
82 F. Supp. 546 (S.D. Cal. 1949),
*aff'd per curium*, 181 F.2d 1010 (9th Cir. 1950)...............................................21

*Genetic Techs. Ltd v. Merial L.L.C.*,
818 F.3d 1369 (Fed. Cir. 2016) ...........................................................................7

*Gottschalk v. Benson*,
409 U.S. 63 (1972)................................................................................................9

*Grip Nut Co. v. Sharp*,
150 F.2d 192 (7th Cir. 1945)..............................................................................15

*Hapgood v. Hewitt*,
119 U.S. 226 (1886).............................................................................................20

*In re Nitz*,
  739 N.E.2d 93 (Ill. App. 2000) ........................................................................23

*Lane Bodley Co. v. Locke*,
  150 U.S. 193 (1893) .........................................................................................20

*McElmurry v. Arkansas Power & Light Co.*,
  995 F.2d 1576 (Fed. Cir. 1993) ......................................... 14, 15, 16, 17, 18, 19

*Mechmetals Corp. v. Telex Comp. Prods., Inc.*,
  709 F.2d 1287 (9th Cir. 1983) .........................................................................16

*Neon Signal Devices, Inc. v. Alpha-Claude Neon Corp.*,
  54 F.2d 793 (W.D. Pa. 1931) .......................................................................19, 20

*PPG Indus., Inc. v. Guardian Indus. Corp.*,
  597 F.2d 1090 (6th Cir. 1979) .........................................................................21

*Papazian v. Am. Steel & Wire Co.*,
  155 F. Supp. 111 (N.D. Ohio 1957) .................................................................19

*Preston v. Marathon Oil Co.*,
  684 F.3d 1276 (Fed. Cir. 2012) .......................................................................26

*Pure Oil Co. v. Hyman*,
  95 F.2d 22 (7th Cir. 1938) ...............................................................................15

*Ryder v. Bank of Hickory Hills*,
  585 N.E.2d 46 (Ill. 1991) .................................................................................23

*Schroeder v. Tracor, Inc.*,
  No. 99-1291, 1999 U.S. App. LEXIS 30386 (Fed. Cir.
  Nov. 5, 1999) .............................................................................................15, 20

*SunTiger, Inc. v. Sci. Research Funding Grp.*,
  189 F.3d 1327 (Fed. Cir. 1999) ..................................................................13, 14

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
  726 F.3d 1306 (Fed. Cir. 2013) .......................................................................13

*Thompson v. Am. Tobacco Co.,*
174 F.2d 773 (4th Cir. 1949) .............................................................16

*U.S. SolarTech, Inc. v. J-Fiber, GmbH,*
Civ. No. 06-10293, 2013 U.S. Dist. LEXIS 58790 (D. Mass. 2013)..............21

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.,*
856 F.Supp.2d 1136 (C.D. Cal. 2012) ........................................19, 20

*United States v. Dubilier Condenser Corp.,*
289 U.S. 178 (1933) ........................................... 16, 17, 18, 19, 24, 26

*Velsicol Corp. v. Hyman,*
87 N.E.2d 35 (Ill. App. 1949)
*(reversed on other grounds* 90 N.E.2d 717 (Ill. 1950)) ....................................15

## Statutes

35 U.S.C. § 101 .........................................................2, 3, 5, 7, 10, 12, 27

## Introduction

Attempting to simultaneously undo the district court's judgment of non-infringement and preserve the validity of his patent, Oleksy presents arguments that flatly contradict each other. First, arguing GE should be found to infringe the claims, Oleksy blithely asserts that the plain language of the claims—"said movement of said spinning form cutter being in a convex path"—should be ignored, as the claims presume a "work coordinate system" where it "does not matter" "whether the machine moves the workpiece relative to the cutting tool, or the cutting tool relative to the workpiece." Oleksy Response Br. p. 12; *see also id.* pp. 6, 9, 19, 27, 29, 52. But arguing that the claims are valid, Oleksy insists that the claims *do* require the spinning form cutter to move in a convex path. For example, Oleksy argues:

- "[T]he Oleksy method applies 'trigonometric analysis' in an industrial process that departs from the prior art to cause a spinning form cutter to move in a convex path …." *Id.* p. 49.

- "[T]he Oleksy method includes an unconventional inventive step of 'causing' the form cutter to move in a convex path." *Id.*

1

- "[U]se of the convex path of the spinning form cutter … is unconventional." *Id.* p. 52.

- "[T]he Oleksy Method is tied to a CNC machine … that includes a spinning form cutter that moves in a convex path …." *Id.* p. 54 n.8.

- "[T]he Oleksy Patent is 'directed to' an industrial process that departs from the prior art to cause a spinning form cutter to move in a convex path …." *Id.* p. 55.

Oleksy cannot have it both ways. The district court's judgment of non-infringement should be affirmed because the *plain language* of the claims requires the spinning form cutter to move in a convex path. As detailed in GE's Principal Brief, GE does not infringe under the plain language and district court's construction because GE does not employ spinning form cutters that move in a convex path to machine root sections of turbine blades.

Alternatively, the patent should be declared invalid under § 101. Under the interpretation of the claims that Oleksy advanced when arguing infringement, they are merely directed to a generic computer-implemented trigonometric calculation of a curved path, divorced from any specific

2

machine requirements. Under this interpretation, the claims are unpatentable abstract ideas that lack any inventive concept. Accordingly, this Court should reverse the district court's denial of GE's motion for summary judgment of invalidity on § 101 grounds.

Oleksy's arguments place him in a veritable Catch-22: If the spinning form cutter must physically move in a convex path, pursuant to the district court's claim construction, then the claims may be valid under § 101, but are not infringed by GE. On the other hand, if only the relative movement of the spinning form cutter matters under the construction advanced by Oleksy, then the claims are invalid under § 101. Oleksy has not advanced—nor can he advance—any viable scenario under which the claims are *both* valid and infringed by GE. And so in either event, the judgment in GE's favor should be affirmed.

In addition, the undisputed facts establish that GE retains a shop right—a type of implied license—to the '529 patent and therefore GE cannot be held liable for infringement as a matter of law. It is undisputed that Oleksy developed the alleged invention on company time, using company materials while employed by GE's predecessor and a wholly-owned GE subsidiary. Under controlling Illinois law, a shop right attached

automatically and is irrevocable. Even if a shop right was "waivable," Oleksy failed to meet his burden to prove waiver. As the district court recognized, there is no *clear* and *unequivocal* evidence of waiver. Thus, Oleksy cannot prove waiver as a matter of law. Accordingly, this Court should reverse the district court's denial of GE's motion for summary judgment of non-infringement based on shop right.

# Argument

## I.   The Asserted Claims Are Not Patent Eligible.

Both the case record and Oleksy's arguments on appeal provide clear and convincing evidence of invalidity under 35 U.S.C. § 101.

Oleksy attempts to overcome the district court's noninfringement judgment by eschewing any specific movement of the spinning form cutter from the scope of his claims. Thus, for there to be any possibility of infringement, Oleksy's claims must be interpreted so broadly as to preempt *all* coordinated machine movements that could cut a particular curved surface in a metal block, without regard to *how* the CNC machine cuts those paths. Because preemption is the "concern that drives" section 101 jurisprudence, claims that would preempt all means of cutting a convex path using a CNC machine are necessarily unpatentable. *See Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014); *see also id.* at 2358 ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment.") (internal quotation omitted).

Oleksy insists that the "invention" embodied in the '529 patent, and the advance over the prior art, claims the ability to use trigonometric

analysis to create programmed instructions that cause a "unique movement" in the "work coordinate system" of a CNC machine: *i.e.*, instructions that result in any movements that somehow cause a cut along a convex path of the radius E+R defined using "trigonometric analysis," an abstract idea. Oleksy Response Br. pp. 43, 44, 52. The specific "unique movement" of the spinning form cutter in a convex path stated plainly in the claim language is but one movement that may properly limit the claims to avoid preemption. Without requiring any defined movement, Oleksy's interpretation thus captures all ways of using a CNC machine to cut along a trigonometrically-defined radius, and renders the claims patent-ineligible.

Moreover, Oleksy's insistence that infringement may be proven by reference to "programmed instructions" alone further confirms the claims cover unpatentable subject matter. Divorced from precisely defined machine movements, "programmed instructions" refer to an unbounded set of potential solutions for actual machine movements that may occur in a variety of ways depending on the machine used. No longer "tied to a particular machine," the claims are merely "directed to" the mathematical solution for cutting a curved surface along a defined radius in a metal

6

block. *See Genetic Techs. Ltd v. Merial L.L.C.*, 818 F.3d 1369, 1375-76 (Fed. Cir. 2016) (noting that in prior cases the Federal Circuit assessed the nature of unpatentable subject matter under *Alice* step one by inquiring into the "focus of the claimed advance over the prior art"). The mathematical solution of the defined radius to be cut is an abstract concept that, without more, may not be patented. *Alice*, 134 S. Ct. at 2355.

Reference to "programmed instructions" alone is not enough. Actual and specific CNC machine movement is necessary to transform the abstract idea of creating programmed instructions for spinning form cutter movement along a convex path in the work coordinate system into a "patent-eligible application." *Id.* Without *actual* CNC machine movement, such as the convex movement of the spinning form cutter stated in the claims, there is no legally operative "transformation" regardless of the *potential* to produce root sections through relative movements of workpiece and cutter. Oleksy's reliance on the Supreme Court's conclusion in *Diamond v. Diehr,* 450 U.S. 175 (1981), and his characterization of CNC machining as an "industrial process," is therefore misplaced, (Oleksy Response Br. pp. 52-53), and the '529 patent claims are invalid under Section 101.

7

### A. Using Trigonometric Analysis To Create Programmed Instructions in the Work Coordinate System Is an Unpatentable Abstract Mathematical Solution.

Oleksy argues that the novel and inventive aspect of the claimed invention is causing a spinning form cutter to move in a convex path defined by trigonometric analysis. Oleksy Response Br. pp. 49, 53 (admitting that the claimed process involves "known mathematical formulas, here trigonometry"). Trigonometric analysis recited in the claims unquestionably represents an unpatentable mathematical algorithm, and a claim "directed to" trigonometric analysis fails under *Alice* step one. *Alice*, 134 S. Ct. at 2355 ("We must first determine whether the claims at issue are directed to a patent-ineligible concept.").

Oleksy argues that the claims do not require any actual movement of the spinning form cutter—only "programmed instructions" in the "work coordinate system" that may be fulfilled by a variety of actual machine movements. Oleksy Response Br. p. 14 (stating that "Oleksy accuses GE's *methods* of infringing") (emphasis in original); *id.* pp. 28-29. According to Oleksy, once trigonometric analysis is used to define the path in "programmed instructions" in the "work coordinate system," various relative movements of machine axes can actually create that path. *Id.* p. 29.

Converting the output of a mathematical function into programmed instructions that a machine can understand is almost identical to the binary number conversion system the Supreme Court held to be an unpatentable abstract idea in *Gottschalk v. Benson*. 409 U.S. 63, 66-67, 71-72 (1972).

Furthermore, the patent discloses, and Oleksy concedes, that the programmed instructions are produced by software generated by a computer—in fact, the computer required for <u>C</u>omputer <u>N</u>umerical <u>C</u>ontrol ("CNC") machining. Oleksy Response Br. pp. 17-18. Oleksy proposes that the CNC machine only translates the programmed instructions into actual movements, and thus argues that infringement takes place once the programmed instructions have been created. *See id.* pp. 8-9, 20-21, 28-29. Therefore, Oleksy simply and improperly urges this Court to ignore its own precedent concerning patent ineligibility in the context of a "general purpose computer." Oleksy Response Br. p. 54 n.10. The computer of the claims uses trigonometric analysis to create programmed instructions that define machine action. Without the action, the claim is directed to an abstract idea.

Essentially, Oleksy interprets the '529 patent claims to have no physical boundaries relating to actual CNC machine movements. Once the

trigonometric analysis defines a set of programmed instructions for any desired radius, all subsequent machine movements—even those that include no movement of the spinning form cutter at all—are ensnared by the claims. This is a remarkable overreach given that the specification, claims and Oleksy's arguments during reexamination proceedings make it clear that the invention relates to the specific movement of the spinning form cutter along a convex path. *See* GE Principal Br. pp. 52-55. If not limited to a specific movement, the trigonometric analysis-generated programmed instructions essentially preempts all CNC machine movements necessary to cut along that defined path. Oleksy Response Br. p. 54. This overbreadth is clear and convincing evidence of the patent-ineligibility of the '529 patent claims.

**B.    The Application of an Otherwise Patent-Ineligible Trigonometric Analysis Is Causing the Movement of the Spinning Form Cutter in a Convex Path.**

Under the second step of the *Alice* framework, an invention is patent-eligible if it "contains an inventive concept sufficient to transform the [mathematical algorithm or abstract concept] into a patent-eligible application." *Alice*, 134 S.Ct. at 2357. Oleksy argues the '529 patent claims satisfy Section 101 under the reasoning in *Diamond v. Diehr*—that an

application of a trigonometric analysis, the mathematical algorithm of the claims, is patent-eligible. Oleksy Response Br. pp. 51-55 (citing *Diehr*, 450 U.S. 175, 184 (1981)). But, to make this specious argument, Oleksy simply sows confusion about what the actual "application" of trigonometric analysis is for the claimed invention.

While the method of the '529 patent relates to aspects of CNC machining, which is, broadly speaking, an "industrial process," that fact alone does not create an "application" sufficient to satisfy *Alice* step two. Indeed, the "inventive step" of the '529 patent claims requires causing the spinning form cutter to move in a convex path. *Id.* pp. 49, 52 (stating that the "***use*** of the convex path of the spinning form cutter . . . ***to cut*** a concave hook, is unconventional"). Causing a specific movement of the spinning form cutter is the only aspect of the claims that might transform the otherwise ineligible algorithm into an eligible application, just as performing a specific rubber-curing method transformed the Arrhenius equation into an eligible application in *Diehr*.

The specific movement of the spinning form cutter along a convex path is required for "the transformation of a metal block into a root section of a turbine blade." Oleksy Response Br. p. 53. That same movement is

11

necessary to tie the patent-ineligible concept to a particular machine. *Id.* at 54 n.10 (stating that "the Oleksy Method is tied to a CNC machine for milling a work piece (metal block) ***that includes a spinning form cutter that moves in a convex path*** while a rotary table simultaneously rotates the work piece").

Thus, if the Court agrees with Oleksy that the claim scope is properly interpreted to exclude actual movements of the CNC milling machine, it will not be transformed into a patent-eligible application, and the asserted claims must be invalid for failing to meet the patent eligibility requirements of Section 101.

## II.  GE Has a Shop Right—an Implied License—to the '529 Patent as a Matter of Law under the Legally Relevant Undisputed Facts.

The district court found that "[i]n the instant case, it is unquestioned that plaintiff conceived, developed and perfected his invention on company time, using company materials." A35; *see also* GE Principal Br. pp. 82-83. Based on these undisputed facts, the district court erred in failing to grant summary judgment to GE of shop right. In his Response Brief, Oleksy mischaracterizes documents that speak for themselves. But Oleksy's

12

mischaracterizations of past events create—at most—only immaterial disputes. The legally operative facts are undisputed. GE is entitled to a judgment of shop right as a matter of law.

Despite Oleksy's insinuation to the contrary (Oleksy Response Br. p. 57), the district court's denial of GE's motion regarding shop right is subject to *de novo* review by this Court. Abuse of discretion is not the proper standard. A denial of summary judgment is reviewed under the law of the regional circuit, and the Seventh Circuit reviews a denial of summary judgment *de novo*. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1340 (Fed. Cir. 2013); *see also* GE Principal Br. p. 49. Oleksy cites *SunTiger, Inc. v. Sci. Research Funding Grp.*, 189 F.3d 1327, 1333-34 (Fed. Cir. 1999) to argue the denial of summary judgment should perhaps be reviewed for an abuse of discretion. Oleksy Response Br. p. 57. The Court noted in *SunTiger* that denials of summary judgment are reviewed with deference because a trial court may, even if summary judgment is warranted, deny summary judgment for policy reasons because it feels the case may benefit from a full hearing. 189 F.3d at 1333. The district court here made no such policy decision, but rather, as detailed below, misunderstood the law regarding shop rights. Summary judgment for GE on shop right is appropriate

13

because the legally material facts are not disputed, and GE is entitled to judgment as a matter of law under those facts. *See id.* at 1334 ("A motion for summary judgment is properly granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").

### A. Oleksy Misconstrues This Court's Decision in *McElmurry* and Ignores Controlling Illinois and Supreme Court Law.

Oleksy's reliance on *McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576 (Fed. Cir. 1993), to justify the district court's denial of summary judgment of shop right, (Oleksy Response Br. pp. 58-61) is misplaced. As the Court noted in *McElmurry*, a "'shop right' is generally accepted as being a right that is created at common law, when the circumstances demand it, under principles of equity and fairness …." *Id.* at 1580. The Court noted that some courts characterize shop right as a type of "implied license"; others consider it as a form of equitable estoppel, holding that the employee "is estopped from asserting a patent right against his employer"; and still others "analyze a 'shop right' as being a combination of the two even though they may characterize it in name as one or the other." *Id.* at 1581 & n.11. As GE pointed out in its Principal Brief (p. 83), and Oleksy did

not dispute, Illinois law controls here because shop rights are a matter of common law. *See id.* at 1580 n.8; *Schroeder v. Tracor, Inc.*, No. 99-1291, 1999 U.S. App. LEXIS 30386, at *4 (Fed. Cir. Nov. 5, 1999) (non-precedential).

As shown in GE's Principal Brief, Illinois courts and federal courts applying Illinois law recognize a shop right as a type of implied license that automatically arises when the invention is developed on company time at the company's expense, as a matter of equity to the employer given the use of the company's resources. GE Principal Br. pp. 84-85 (citing *Grip Nut Co. v. Sharp*, 150 F.2d 192, 197 (7th Cir. 1945); *Pure Oil Co. v. Hyman*, 95 F.2d 22, 25 (7th Cir. 1938); *Velsicol Corp. v. Hyman*, 87 N.E.2d 35, 42 (Ill. App. 1949) *(reversed on other grounds* 90 N.E.2d 717 (Ill. 1950)). This Court noted in *McElmurry* that when courts view a shop right as an implied license, "the focus is often on whether the employee engaged in any activities, *e.g.*, developing the invention on the employer's time at the employer's expense, which *demand* a finding that he impliedly granted a license to his employer to use the invention." 995 F.2d at 1581 (emphasis added).

Moreover, this controlling Illinois law is consistent with Supreme Court precedent. The Supreme Court has explained the shop right doctrine as meaning that "where a servant, during his hours of employment,

15

working with his master's materials and appliances, conceives and perfects an invention for which he obtains a patent, he *must* accord his master a non-exclusive right to practice the invention." *United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 188 (1933) (questioned on other grounds) (emphasis added). *See also Mechmetals Corp. v. Telex Comp. Prods., Inc.*, 709 F.2d 1287, 1291 (9th Cir. 1983) ("The Supreme Court developed the concept of shop right as a form of equitable compensation for situations where the employer has financed the employee's invention by providing wages, materials, tools, and a workplace."); *Cal. E. Labs., Inc. v. Gould*, 896 F.2d 400, 402 (9th Cir. 1990) ("The right is based on the employer's presumed contribution to the invention through materials, time, and equipment.") (citing *Dubilier*, 289 U.S. at 188-89); *Thompson v. Am. Tobacco Co.*, 174 F.2d 773, 778 (4th Cir. 1949) ("Since the servant uses his master's time, facilities, and materials to attain a concrete result, the latter is in equity entitled to use that which embodies his own property and to duplicate it as often as he may find occasion to employ similar appliances in his business."). *McElmurry* does not hold differently.

In *McElmurry*, presumably Arkansas law controlled, *see* 995 F.2d at 1578-80, and it appears the Court was not sure if the "implied license"

doctrine relevant here or another form of the doctrine which more resembles "equitable estoppel" should apply. *See id.* at 1580-81. In concluding that the district court's finding of shop right was not in error, this Court first noted that the district court relied on the implied license test of *Dubilier*, under which shop rights automatically attach when an employer's time and materials are used:

> [W]here a servant, during his hours of employment, working with his master's materials and appliances, conceives and perfects an invention for which he obtains a patent, he must accord his master a nonexclusive right to practice the invention. [citation omitted] This is an application of equitable principles. Since the servant uses his master's time, facilities and materials to attain a concrete result, the latter is in equity entitled to use that which embodies his own property and to duplicate it as often as he may find occasion to employ similar appliances in his business.

*Id.* at 1582 (quoting *Dubilier*, 289 U.S. at 188-89). The Court then went on to note that the district court "also accepted a discussion of 'shop rights' set forth in one of [plaintiff's] briefs" that set forth several other factors, *i.e.*, the "totality of the circumstances," that could also be considered in analyzing a shop right case. *Id.* This Court held the district court had not erred because applying either the implied license test set forth in *Dubilier*, or the version

of the law espoused by the plaintiff, the district court properly found the defendant had acquired a shop right in the patent. *Id.*

Under *McElmurry*, therefore, use of company time and materials to conceive or develop an invention are sufficient to create a shop right as recognized in *Dubilier*. Indeed, this Court stated that "[a]n employer *will* have shop rights in an invention in situations where the employer has financed an employee's invention by providing wages, materials, tools and a work place." *Id.* (emphasis added). Although the Court recognized that other factors (such as consent or acquiescence to the employer's use of the invention), when viewed under the totality of the circumstances, may *also* create a shop right, *see id.* at 1581-82, nothing in *McElmurry* suggests that "other factors" can defeat or revoke a shop right where the employer "is in equity entitled to use that which embodies his own property…." *Id.* at 1582 (quoting *Dubilier*, 289 U.S. at 188-89).

It is undisputed that Oleksy conceived and developed the invention while working for GE's predecessor "Old Preferred," and then GE's wholly-owned subsidiary "New Preferred," using their time and equipment, and help of other company employees. *See* GE Principal Br. pp. 82-83 (citing A35, A26, A465-66, A494-96, A498). Therefore, under the

18

implied license type of shop right adopted under Illinois law and *Dubilier*, and explained in *McElmurry*, GE acquired and continues to maintain a shop right to Oleksy's invention.

### B.    Undisputed Facts Regarding GE's Acquisition of Preferred Confirm, Rather Than Preclude, GE's Shop Rights.

Oleksy next argues that because he was employed by GE's predecessor and a wholly-owned GE subsidiary, rather than directly by GE, GE cannot possess a shop right in his alleged invention. Oleksy Response Br. pp. 63-64. This argument also fails as a matter of law. Numerous courts have held that shop rights pass to the successor or purchaser of a business. *See, e.g., Cal. E. Labs., Inc. v. Gould*, 896 F.2d at 402; *Papazian v. Am. Steel & Wire Co.*, 155 F. Supp. 111, 120 (N.D. Ohio 1957); *Neon Signal Devices, Inc. v. Alpha-Claude Neon Corp.*, 54 F.2d 793, 796-97 (W.D. Pa. 1931). Moreover, arguments based on the "particular form of incorporating the purchased company into the" structure of a purchasing conglomerate based on the formalities of "modern business organization" are "unsuited to the equitable origins of the shop right concept." *Cal. E. Labs.*, 896 F.2d at 402; *see also Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 856 F.Supp.2d 1136, 1150 (C.D. Cal. 2012).

Oleksy's reliance on *Hapgood v. Hewitt*, 119 U.S. 226 (1886) to suggest GE cannot hold a shop right, (Oleksy Response Br. p. 64), is again misplaced. *Hapgood* merely held that a defunct "dissolved" corporation cannot "assign" a shop right to an entirely different corporation simply because that corporation was organized by some of the shareholders of the dissolved corporation. 119 U.S. at 234. A shop right is not an ownership interest and thus it cannot be assigned or transferred like an actual ownership interest. *See id.* However, as the Supreme Court subsequently noted in a case holding the lower court erred in rejecting an implied license or shop right defense of a successor company to the plaintiff's employer on the basis of *Hapgood*, "a license … is transmissible by succession to a corporation …." *Lane Bodley Co. v. Locke*, 150 U.S. 193, 195-97 (1893); *see also Ultimax*, 856 F.Supp.2d at 1150 (describing *Lane Bodley* as "seminal case interpreting the shop right doctrine, [where] the Supreme Court expressly permitted the use of a shop right by a successor").

"[A] shop right can and will pass where there is a complete succession to the entire business and good will of the licensee." *Neon Signal*, 54 F.2d at 796; *see also Schroeder*, 1999 U.S. App. LEXIS 30386, at *8 ("successor in interest to [company that acquired shop right]'s entire business, is entitled

to assert [that company]'s shop right defense"). For instance, "the courts have consistently held that shop rights do pass in a statutory merger." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 597 F.2d 1090, 1094 (6th Cir. 1979) (citations omitted). Likewise, a shop right transfers to a new entity that buys all the assets of the shop right holder. *See Gate-Way, Inc. v. Hillgren*, 82 F. Supp. 546, 554-55 (S.D. Cal. 1949), *aff'd per curium*, 181 F.2d 1010 (9th Cir. 1950); *U.S. SolarTech, Inc. v. J-Fiber, GmbH*, Civ. No. 06-10293, 2013 U.S. Dist. LEXIS 58790, at *16 (D. Mass. 2013).

Under the undisputed facts that Oleksy conceived and developed the invention while working for GE's predecessor "Old Preferred" and then GE's wholly-owned subsidiary "New Preferred" using their time and equipment, and with help of other company employees, *see* GE Principal Br. pp. 82-83, GE clearly became vested with shop rights. An Old Preferred shop right arose prior to 1998 when Oleksy first conceived and starting developing his "invention" and transferred from Old Preferred to its successor, New Preferred/GE. GE also has a separate shop right due to spring 1998 development work after the change in ownership. *See Cal. E. Labs*, 896 F.2d at 402-03; *Colagrossi v. UBS Sec., LLC*, 2015 IL App (1st) 133694-U, at *P89 (Ill. App. Aug. 21, 2015) (unpublished) (noting both

company at which plaintiff started development of processes and company at which he continued development would have a shop right, and any shop rights would also pass through purchase of company).[1]

### C.    GE Did Not Waive Its Shop Rights.

As detailed above, as a matter of law, GE held shop rights given Oleksy's undisputed use of company resources to conceive and develop his alleged invention. Oleksy's argument is essentially that GE "waived" its shop rights after they arose. *See* Oleksy Response Br. pp. 59-63. However, as detailed in GE's Principal Brief (p. 85), under controlling Illinois law, shop rights are not waivable.

Moreover, even assuming the shop rights were waivable, the district court's own assessment of the disputed facts related to the waiver argument shows Oleksy could not meet his burden to prove waiver as a matter of law. "Waiver may be made by an express agreement or it may be implied from the conduct of the party alleged to have waived a right."

---

[1] If Oleksy believes that GE should be treated separately from its subsidiaries, then GE cannot be held liable for infringement of methods of CNC machining performed at its subsidiaries that are the subject of Oleksy's infringement allegations in this case. *See* GE Principal Br. p. 27; A2750-51.

*Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (Ill. 1991). "Implied waiver of a legal right must be proved by *clear*, *unequivocal*, and decisive act of the party who is alleged to have committed waiver." *Id.* (emphasis added). The party alleging waiver bears the burden to prove it. *See id.*; *In re Nitz*, 739 N.E.2d 93, 103 (Ill. App. 2000).

As the district court concluded in addressing Oleksy's contentions that Mr. Harvey waived GE's shop rights, "[a]lthough defendant argues that there is no evidence that Harvey was intending to or had the authority to waive any shop right, there is equally no evidence that he did not."A35. Thus, under the district court's factual findings, there is *no clear, unequivocal* evidence of waiver. Therefore, Oleksy cannot meet his burden to establish waiver as a matter of law. *See Ryder*, 585 N.E.2d at 49-50 (holding waiver argument failed because of lack of evidence that employee with knowledge of disputed rights intentionally and unequivocally waived those rights).

The April 23, 1998, memorandum clearly is not an express waiver. The language of the memorandum speaks for itself and, on its face, is not an express waiver of shop rights. A416; *see also* GE Principal Br. pp 85-86. To the extent Oleksy believes the district court's observation that "defendant through numerous principals and agents repeatedly told

23

plaintiff that it had no interest in using his invention," A35, justifies a

finding of waiver of shop rights, the belief is based on a fundamentally

flawed understanding of shop rights.

A shop right is an implied non-exclusive license to a patent. *See*

*Dubilier*, 289 U.S. at 187-89. An employer may intend to not practice or use

an invention developed on its equipment by its employees, yet nonetheless

intend to retain a *license* to that invention. Thus, even if GE "repeatedly told

plaintiff that it had no interest in *using* the invention," A35 (emphasis

added), that is legally irrelevant to the issue of waiver of shop rights.

GE repeatedly told Oleksy it planned to retain all its rights regarding

any patent, even if it did not use and thus had no interest in *practicing* the

claimed invention. *See* A422, A441-42, A450, A453. Indeed, even Oleksy

repeatedly acknowledged that it had been communicated to him that "GE

was interested in retaining rights to [his] invention" (even though he

misunderstood what that meant). A439; *see also* A352 ("It is Mr. Oleksy's

understanding that Preferred Machine & Tool Products Corp., desires to

merely retain a shop right in Mr. Oleksy's process."); A453 ("While I

understand your position in regard to GE's claims to Oleksy's invention, as

advised we are not in agreement …"); 432-33, 430 ("GE was interested in

retaining rights to my [Oleksy's] invention."). Put simply, GE's decision

not to implement Oleksy's invention was not a waiver of GE's shop rights

(*i.e.*, implied license) to the patent.

### D.  GE's Original Counterclaim for Breach of Contract Does Not Preclude Shop Right.

Oleksy noted in his Response Brief (p. 44) that GE originally included

a counterclaim for breach of contract and made an argument regarding an

ownership right to the patent based on an employment agreement to

assign, in addition to arguing it holds common law shop rights in the

patent. *See also* A25-34.

Despite Olesky's argument, the fact that GE initially asserted a breach

of contract counterclaim raising potential ownership rights to the '529

patent,[2] does not preclude a summary judgment finding of shop rights or

implied license. Citing *Board of Trustees of Leland Stanford University v. Roche

Molecular Systems, Inc.*, 2007 WL 608009 at *20 (N.D. Cal. 2007), the district

court stated that, "to the extent that [Oleksy's employment agreement

requiring Oleksy to assign inventions to GE] applies to plaintiff's

_____

[2] GE did not maintain its breach of contract counterclaim in its First Amended Answer and Counterclaims to Oleksy's Third Amended and Supplemental Complaint. *See* A3176-78.

invention, the shop right doctrine does not." A36. To the extent the district court denied GE summary judgment on the basis of shop rights because of the existence of this agreement, A32-36, such denial was legal error.

As illustrated by this Court's subsequent decision in the *Stanford v. Roche* case, to the extent GE proved it was the legal owner of the '529 patent pursuant to a contract, shop rights would be unnecessary because GE would already have broader rights and/or Oleksy would lack standing to sue GE for infringement. *See Board of Trustees of Leland Stanford Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841-42, 848-49 (Fed. Cir. 2009); *see also Dubilier*, 289 U.S. at 187-89. However, even if GE does not have ownership of the patent by way of contractual assignment, at a minimum GE nonetheless holds a shop right or implied license to the patent. *See Preston v. Marathon Oil Co.*, 684 F.3d 1276 (Fed. Cir. 2012) (not reaching shop rights issue, but acknowledging that shop rights were an alternative possibility if there was no assignment of patents to employer).

Based on Illinois law, it is clear that GE acquired shop rights to Oleksy's patent and did not waive them. The district court's denial of GE's motion for summary judgment of shop right should be reversed.

# Conclusion

To the extent that the claims of the '529 patent are valid, the judgment of non-infringement should be affirmed for all the reasons set forth in GE's Principal Brief. Alternatively, the '529 patent should be declared invalid pursuant to 35 U.S.C. § 101. In addition, GE should be found to have shop rights to the '529 patent.

Respectfully submitted,

/s/ Richard L. Rainey
Richard L. Rainey
Anthony Herman
Courtney R. Forrest
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 2001-4956
Tel: (202) 662-6000
*rrainey@cov.com*
*cforrest@cov.com*
*aherman@cov.com*

Martin R. Lueck
Marla R. Butler
Brenda L. Joly
ROBINS KAPLAN LLP
800 LaSalle Avenue
Minneapolis, MN  55402
Telephone:  (612) 349-8500
*mlueck@robinskaplan.com*
*mbutler@robinskaplan.com*
*bjoly@robinskaplan.com*

Anna C. Halsey
ROBINS KAPLAN LLP
One Atlantic Center
1201 West Peachtree Street
Suite 2200
Atlanta, GA 30309
Tel: (404) 760-4300
*ahalsey@robinskaplan.com*

Matthew B. McFarlane
ROBINS KAPLAN LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022
Tel: (212) 980-7400
*mmcfarlane@robinskaplan.com*

*Counsel for Defendant-Cross Appellant*
*General Electric Company*

# Proof of Service

I hereby certify that on June 13, 2016, the foregoing DEFENDANT-CROSS APPELLANT GENERAL ELECTRIC COMPANY'S REPLY BRIEF was filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the appellate CM/ECF system which pursuant to Federal Rule of Appellate Procedure 25(c)(2) and Federal Circuit ECF-6(A) constitutes service on all parties represented by attorneys who have registered for the CM/ECF system, and that a copy was served on counsel of record for Defendant-Appellee via e-mail:

Thomas Gerard Pasternak
Daniel Stringfield
Slawomir (Steve) Z. Szczepanski
Steptoe & Johnson LLP
115 S. LaSalle, Suite 3100
Chicago, Illinois 60603
tpastern@steptoe.com
dstringfield@steptoe.com
sszczepanski@steptoe.com

John Caracappa
Charles F. Schill
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
jcaracap@steptoe.com
cschill@steptoe.com


Dated:  June 13, 2016          By: /s/ Richard L. Rainey
                                   Richard L. Rainey
                                   *Attorney for Defendant-Cross Appellant*

# Certificate of Compliance
## with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

The undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(B)(i).  The brief contains 5,386 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

The undersigned also hereby certifies that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Book Antiqua type style, with 14-point or larger Book Antiqua type style headings.

As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C)(i), the undersigned has relied upon the word count of this word processing system in preparing this certificate.

Dated:  June 13, 2016                    By: /s/ Richard L. Rainey
                                      Richard L. Rainey
                                      *Attorney for Defendant-Cross Appellant*